IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| RODNEY DALE HOOD,<br>TDCJ-CID #1659266, | §<br>§<br>§ | |
| Plaintiff, | §<br>§ | |
| v. | §<br>§ | CIVIL ACTION NO. H-12-0726 |
| MONTGOMERY COUNTY, TEXAS,<br>et al., | §<br>§<br>§ | |
| Defendants. | §<br>§ | |

MEMORANDUM AND ORDER
ON MOTIONS FOR SUMMARY JUDGMENT

## I. Introduction

Plaintiff, Rodney Dale Hood, is a state inmate currently confined in the Texas Department of Criminal Justice - Correctional Institutions Division's (TDCJ-CID) Eastham Unit.  Plaintiff filed a complaint under 42 U.S.C. § 1983 alleging violations of his civil rights while housed for approximately seven months in the Montgomery County Jail (MCJ).  Plaintiff proceeds *pro se* and has been granted leave to proceed *in forma pauperis*.  Plaintiff's complaint alleges, *inter alia*, that Defendants denied him adequate medical care by withholding Phenobarbital, which he requested as a seizure medication, denying treatment for physical and mental health injuries, and by failing to accommodate his disabilities.[1]

---

[1] One month later Plaintiff filed suit against several employees of TDCJ-CID's Eastham Unit, to which Plaintiff was transferred from MCJ, alleging that they too had wrongfully denied

Plaintiff seeks declaratory relief, compensatory and punitive damages, attorney fees, costs and any other relief the Court deems proper.

Named as Defendants in this suit are Montgomery County, Texas; Tommy Gage, Montgomery County Sheriff; Dr. Kenneth G. Davis, Medical Director of MCJ; Edsel West, MCJ Medical Supervisor; and, jail medics Robert Simard, Tracy Tidwell, and Mini Parker. The individual Defendants are sued in both their official and personal capacities. Defendant Davis, an independent contractor hired to provide medical services at MCJ, has filed his own motion for summary judgment. (Docket No. 17.) The remaining Defendants have filed a joint motion for summary judgment. (Docket No. 18.) After reviewing the pleadings, the summary judgment evidence, and the applicable law, the Court grants the Defendants' motions for summary judgment and dismisses this case for reasons set forth below.

## II. Facts[2]

Plaintiff reports a history of treatment for recurring seizures; anxiety and panic attacks; severe pain due to head

---

him Phenobarbital. The District Court's dismissal of that action as frivolous was affirmed by the Fifth Circuit. Hood v. Sandmann, 2013 WL 4406874 (5th Cir. 2013) (unpublished).

[2] The facts presented here are drawn from the pleadings, affidavits and exhibits on file and are construed in the light most favorable to Plaintiff, the non-moving party.

2

injuries, broken bones and degenerative disc disease; osteoarthritis; and hallucinations. (Compl. 5.) On February 9, 2010, Plaintiff was transferred from the Liberty County Jail to the Montgomery County Jail. Plaintiff arrived with a Texas Uniform Health Status Update ("Update") documenting his medical conditions and the medications he was receiving. (Montgomery County Records (hereinafter "COU") 184 (Docket No. 17, Ex. D)). The Update stated that Plaintiff had a history of seizures for which he was receiving Phenobarbital. It also noted allergies to other seizure medications including Carbamazepine (Tegretol), Dilantin and Depakote. Upon processing Plaintiff into MCJ, Defendant Tracy Tidwell, a jail medic, confiscated and sealed up Plaintiff's Phenobarbital pending further approval from the Medical Director. Ms. Tidwell was following MCJ policy requiring that medications presenting a high risk of abuse be withheld until reauthorized by the Medical Director. (COU 226.)

Defendant Davis was serving as the Medical Director of MCJ when Plaintiff arrived. On February 10, 2010, Ms. Tidwell sent Dr. Davis an electronic memo regarding Plaintiff's seizure history and prescription for Phenobarbital, stating that she would await Dr. Davis's instructions before restarting or changing the medication. (COU 101.) Dr. Davis replied the following day, asking how long it had been since Plaintiff's last seizure, but did not receive a prompt response. (COU 99.) One week later, on February 18, 2010,

3

the jail received a call from an attorney for Plaintiff asking what needed to be done to restore Plaintiff's seizure medication.  (COU 87.)  Defendant Parker also sent an inquiry that day to Dr. Davis asking about Plaintiff's anxiety medication, Effexor, which Plaintiff had been refusing since his Phenobarbital was discontinued.  Plaintiff complained that without Phenobarbital the Effexor caused him to "go crazy."  (COU 85.)

On February 19, 2010, Plaintiff was brought to the infirmary to gather additional information about his medical history. Plaintiff reported that prior to entering the Liberty County Jail he had been taking Klonopin for seizures and, while there, he was given several alternative medications that did not work well for him.  (COU 86.)  Plaintiff further stated that his outside physician had passed away but that his wife could provide medical records documenting his treatment history.  Plaintiff was given a fax number for his wife to submit the records but there is no evidence that she ever did so.  Plaintiff also signed a medical release form which allowed the jail to obtain partial records for Plaintiff from the Kingwood Medical Center.[3]  During this visit Plaintiff reported having a seizure the previous night but stated that his last prior seizure was over two months ago.  (Id.)  Later

---

[3] These records deal primarily with Plaintiff's treatment for back and spinal injuries, anxiety and neuropathy.  They note, however, Plaintiff's history of seizures and use of the seizure medication Klonopin.  (COU 186-219.)

that day, Defendant Parker sent an inquiry to Dr. Davis regarding Plaintiff's seizure medication, again noting Plaintiff's reported allergies to Dilantin and Depakote but making no mention of Carbamazepine. (COU 86.) That evening, Dr. Davis prescribed Carbamazepine as a seizure medication for Plaintiff. (COU 85.) Dr. Davis reportedly chose this drug because it did not present as great a risk of abuse as Phenobarbital. (Aff. of Kenneth G. Davis, M.D. (Docket No. 17, Ex. E) ¶ 9.) Dr. Davis also responded to Defendant Parker's Effexor inquiry, instructing that the Effexor be tapered off, even though Plaintiff had been refusing it entirely for nearly ten days. (COU 85.)

Plaintiff made a sick call request on February 20, 2010, stating that he had a seizure at about 2:30 a.m. on February 18th, and "wanted it documented in his chart." Plaintiff did not notify the picket officer of this self-reported event, and was told "next time to notify officer or have another inmate notify the officer if he has a seizure." (COU 84). On February 21, 2010, two days after being prescribed Carbamazepine, Plaintiff filed a grievance stating that he was allergic to the medication. (COU 145.) Plaintiff filed another grievance on March 4, 2010, again questioning the choice of medication and stating that he was experiencing many side effects including dizziness, headaches, chest pain, irregular heartbeat, hallucinations and shortness of breath. (COU 143.) That same day, Plaintiff began refusing the Carbamazepine and

signed a Release of Liability documenting his decision.  On March 8, 2010, Plaintiff again requested to be placed back on Phenobarbital but his request was denied.  Plaintiff alleges that he experienced severe allergic reactions or side-effects from the Carbamazepine, including bleeding from his mouth, anus, and under his skin.  (Compl. 6-7.)  Although Plaintiff states that he reported these symptoms to jail staff, there is no evidence that jail staff, medics, or other inmates ever observed them.

After discontinuing the Carbamazepine, Plaintiff alleges that he experienced additional seizures.  Plaintiff filed more grievances stating that he had fallen from a top bunk during a seizure episode.  (COU 38, 147-8.)  Plaintiff requested to be assigned a bottom bunk or moved into the infirmary, but his requests were denied.  On April 5, 2010, a "Text Entry" was made on Plaintiff's records regarding his grievances, noting there was "no record of seizure activity or falls" and "no indication of need for MD evaluation."  (COU 60.)  Another entry dated May 17, 2010, summarized Plaintiff's grievances and stated, "It is believed that this inmate is attempting to manipulate the system in order to obtain controlled substances during confinement.  There has been no observation of seizure or abnormal activity during confinement." (COU 44.)

Plaintiff received responses denying each of his initial grievances, to which Plaintiff repeatedly stated his intention to

appeal.   However, Plaintiff's appeals were often treated as new grievances and summarily rejected by jail staff.   Finally, on August 16, 2010, Defendant Edsel West, the jail Medical Supervisor, issued a detailed response to Plaintiff's grievance appeals.  (COU 138.)   West concluded that Plaintiff had received appropriate treatment for his seizures, anxiety and hypertension and denied any record of orthopedic injuries or problems.  Regarding the denial of Phenobarbital, West stated that it was a "controlled schedule class medication . . . not provided or dispensed within the Montgomery County Jail by policy."  (Id.)  West also reiterated that there had been no observed seizure activity and that Plaintiff had refused the reasonable alternative seizure medication prescribed to him (Carbamazepine).   West further noted the lack of "any medical documentation of observations to support [Plaintiff's] claims of falls, numbness in extremities or problems associated with orthopedic injuries."  (COU 139.)   The only encounters that Plaintiff had had with MCJ's medical facility were "related to medication administration and attempts to obtain medical records supporting [Plaintiff's] medical complaints."  Id.  Regarding Plaintiff's disability claims, West stated that the jail does not assign specific bunks to inmates and found there were "no medical conditions identified in [Plaintiff's] medical history that support or suggest a need for special accommodations based on medical needs or findings."  (Id.)  Based on these findings Defendant West

affirmed the denial of Plaintiff's grievances.  Plaintiff was subsequently transferred from MCJ to TDCJ-CID's Eastham Unit on August 30, 2010.

### III. Standard of Review

Defendants' summary judgment motions are governed by Rule 56 of the Federal Rules of Civil Procedure, which mandates entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a sufficient showing of the existence of an element essential to the party's case, and on which that party will bear the burden at trial.  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc); *see also* Baton Rouge Oil and Chem. Workers Union v. ExxonMobil Corp., 289 F.3d 373, 375 (5th Cir. 2002).  On summary judgment a reviewing court must determine whether the "pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c)(2); Celotex Corp., 477 U.S. at 322–23; Weaver v. CCA Indus., Inc., 529 F.3d 335, 339 (5th Cir. 2008).

The initial burden on summary judgment rests on the movant, who must identify areas essential to the non-movant's claim for which there is an "absence of a genuine issue of material fact."

Lincoln Gen. Ins. Co. v. Reyna, 401 F.3d 347, 349 (5th Cir. 2005). The moving party, however, need not negate the elements of the non-movant's case.  Boudreaux v. Swift Transp. Co., 402 F.3d 536, 540 (5th Cir. 2005).  The moving party may meet its burden merely by pointing out "'the absence of evidence supporting the nonmoving party's case.'"  Duffy v. Leading Edge Products, Inc., 44 F.3d 308, 312 (5th Cir. 1995) (quoting Skotak v. Tenneco Resins, Inc., 953 F.2d 909, 913 (5th Cir. 1992)).

If the moving party meets its initial burden, the non-movant must go beyond the pleadings and designate specific facts showing that there is a genuine issue of material fact for trial. Littlefield v. Forney Indep. Sch. Dist., 268 F.3d 275, 282 (5th Cir. 2001) (internal citation omitted).  The non-movant must do more than simply show that there is some "metaphysical doubt" as to the material facts.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).  "An issue is material if its resolution could affect the outcome of the action.  A dispute as to a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." DIRECTV Inc. v. Robson, 420 F.3d 532, 536 (5th Cir. 2006) (internal citations omitted).  In deciding whether a genuine and material fact issue has been created, the facts, and the inferences to be drawn from them, must be reviewed in the light most favorable to the non-moving party.  Matsushita Elec. Indus. Co., 478 U.S. at

587-88; *see also* <u>Reaves Brokerage Co. v. Sunbelt Fruit & Vegetable Co.</u>, 336 F.3d 410, 412 (5th Cir. 2003).   However, factual controversies are resolved in favor of the non-movant "only 'when both parties have submitted evidence of contradictory facts.'" <u>Alexander v. Eeds</u>, 392 F.3d 138, 142 (5th Cir. 2004) (quoting <u>Olabisiomotosho v. City of Houston</u>*,* 185 F.3d 521, 525 (5th Cir. 1999)).

When a plaintiff proceeds *pro se* the courts review his pleadings under a less stringent standard than those drafted by attorneys.  *See* <u>Haines v. Kerner</u>, 404 U.S. 519 (1972); <u>Bledsue v. Johnson</u>, 188 F.3d 250, 255 (5th Cir. 1999).   Pleadings filed by a *pro se* litigant are entitled to a liberal construction that affords all reasonable inferences which can be drawn from them.   *See* <u>Haines</u>, 404 U.S. at 521; *see also* <u>Pena v. United States</u>, 122 F.3d 3, 4 (5th Cir. 1997) (citing <u>Nerren v. Livingston Police Dept.</u>, 86 F.3d 469, 473 & n.16 (5th Cir. 1996)).   Nevertheless, "the notice afforded by the Rules of Civil Procedure and the local rules" is considered "sufficient" to advise a *pro se* party of his burden in opposing a summary-judgment motion.  *See* <u>Martin v. Harrison County Jail</u>, 975 F.2d 192, 193 (5th Cir. 1992).

## IV.  <u>Dr. Davis's Motion for Summary Judgment</u>

Dr. Davis moves for summary judgment on all claims against him.  Davis first asserts that Plaintiff's claims are barred by the

Prisoner Litigation Reform Act (PLRA) because Plaintiff failed to exhaust all available administrative remedies. Next, Davis asserts that the evidence here does not show that Davis violated Plaintiff's rights under the Eighth Amendment. Finally, Davis contends that even if Plaintiff could show an Eighth Amendment violation, Davis is entitled to qualified immunity because the rights at issue were not clearly established when the alleged violations occurred. The Court addresses each of these arguments in turn.

A.   Exhaustion of Administrative Remedies

Defendant Davis seeks summary judgment on the grounds that Plaintiff failed to exhaust available administrative remedies, as required under the PLRA. Although Davis admits that Plaintiff filed numerous grievances regarding each of his claims, he contends that Plaintiff failed to appeal the denial of his grievances to the jail supervisor or sheriff. Plaintiff, on the other hand, asserts that he properly appealed, but his appeals were often mishandled by jail staff and treated as new grievances. Plaintiff further contends that Defendant West's review amounts to a final grievance response.

Under the PLRA, codified as amended at 42 U.S.C. § 1997e, an inmate is required to exhaust administrative remedies for all "action[s] . . . brought with respect to prison conditions" before

11

filing a civil rights suit in federal court under 42 U.S.C. § 1983 or "any other Federal law." 42 U.S.C. §§ 1997e(a)-(c) (2012). The Supreme Court has held repeatedly that § 1997e(a) requires exhaustion of *all* administrative procedures before an inmate can sue in federal court. *See* <u>Booth v. Churner</u>, 532 U.S. 731, 741 (2001); *see also* <u>Porter v. Nussle</u>, 534 U.S. 516, 532 (2002) (holding that the PLRA requires exhaustion of all claims concerning prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong).

The Supreme Court has emphasized that the PLRA's exhaustion requirement mandates "proper exhaustion," <u>Woodford v. Ngo</u>, 548 U.S. 81, 93 (2006), which demands compliance with all procedural rules. As the Supreme Court has recognized, "Congress enacted § 1997e(a) to reduce the quantity and improve the quality of prisoner suits; to this purpose, Congress afforded corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." <u>Porter</u>, 534 U.S. at 524. By requiring exhaustion of administrative remedies, Congress hoped that "corrective action taken in response to an inmate's grievance might improve prison administration and satisfy the inmate, thereby obviating the need for litigation." <u>Id.</u> (citing <u>Booth</u>, 532 U.S. at 737). In addition to filtering out potentially frivolous claims, Congress also believed that internal review would facilitate

12

adjudication of cases ultimately brought to court by giving prison officials an opportunity to develop an administrative record that clarifies the contours of the controversy.   Id. (citations omitted).

In this case, Defendant Davis has not shown that Plaintiff failed to exhaust available administrative remedies.   Although Davis contends that Plaintiff never appealed to the sheriff, he acknowledges that each of Plaintiff's grievance appeals was ultimately reviewed by Edsel West, the jail Medical Supervisor. Because Plaintiff's grievances against Dr. Davis dealt exclusively with medical issues, it was reasonable for Plaintiff to assume that West's response to Plaintiff's grievance appeals was final. Importantly, West's review satisfied the purposes of the PLRA's exhaustion requirement by ensuring that jail administrators were aware of Plaintiff's claims, had ample opportunity to address them, and were able to develop a record for possible litigation. Moreover, Plaintiff was presumably aware that the jail had only a two-step grievance process, and West's supervisory response did not inform Plaintiff that he was required to take a further appeal to the sheriff.   Defendant Davis is not entitled to summary judgment based on Plaintiff's alleged failure to exhaust administrative remedies.

13

B.   <u>Eighth Amendment</u>

Plaintiff complains that Dr. Davis subjected him to cruel and unusual punishment in violation of the Eighth Amendment by failing to provide adequate medical care for Plaintiff's various ailments. Davis, however, contends that he prescribed appropriate treatment based on the information presented to him and according to jail policies.

1.   <u>Legal Standard</u>

The Eighth Amendment's prohibition against cruel and unusual punishment forbids deliberate indifference to the serious medical needs of prisoners. <u>Estelle v. Gamble</u>, 429 U.S. 97, 104 (1976). "Although the Eighth Amendment 'does not, by its precise words, mandate a certain level of medical care for prisoners[,]' the Supreme Court has interpreted it as imposing a duty on prison officials to 'ensure that inmates receive adequate . . . medical care.'" <u>Easter v. Powell</u>, 467 F.3d 459, 463 (5th Cir. 2006) (quoting <u>Farmer v. Brennan</u>, 511 U.S. 825, 832 (1994)). "A prison official violates the Eighth Amendment's prohibition against cruel and unusual punishment when his conduct demonstrates deliberate indifference to a prisoner's serious medical needs, constituting an 'unnecessary and wanton infliction of pain.'" <u>Easter</u>, 467 F.3d at 463 (citing <u>Wilson v. Seiter</u>, 501 U.S. 294, 297 (1991) (quoting <u>Estelle v. Gamble</u>, 429 U.S. 97 (1976)).

The Eighth Amendment deliberate-indifference standard has both an objective and subjective component. *See* <u>Farmer v. Brennan</u>, 511 U.S. 825, 834 (1994). Under the objective component, the deprivation alleged must be "sufficiently serious," resulting in "a substantial risk of serious harm." <u>Farmer</u>, 511 U.S. at 834. A medical condition is considered sufficiently serious if it is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." <u>Farmer</u>, 511 U.S. at 834, 114 S. Ct. 1970.

To satisfy the subjective component of the deliberate indifference standard, the prisoner must show that (1) the defendants were aware of facts from which an inference of an excessive risk to the prisoner's health or safety could be drawn, and (2) that they actually drew an inference that such potential for harm existed. *See* <u>id.</u> at 837; <u>Harris v. Hegmann</u>, 198 F.3d 153, 159 (5th Cir. 1999). The Fifth Circuit has stated that the deliberate-indifference standard is an "extremely high" one to meet. <u>Domino v. Texas Dep't of Criminal Justice</u>, 239 F.3d 752, 756 (5th Cir. 2001). Thus, "[a] prison official acts with deliberate indifference 'only if [(A)] he knows that inmates face a substantial risk of serious bodily harm and [(B)] he disregards that risk by failing to take reasonable measures to abate it.'"

Gobert v. Caldwell, 463 F.3d 339, 346 (5th Cir. 2006) (quoting Farmer, 511 U.S. at 847).

It is well established that allegations of unsuccessful medical treatment, acts of negligence, or medical malpractice "do not constitute deliberate indifference . . . nor does a prisoner's disagreement with his medical treatment, absent exceptional circumstances." Gobert, 463 F.3d at 347 (citations omitted). Thus, allegations of negligence and medical malpractice will not suffice to demonstrate an Eighth Amendment claim. See Gibbs v. Grimmette, 254 F.3d 545, 549 (5th Cir. 2001); see also Stewart v. Murphy, 174 F.3d 530, 534 (5th Cir. 1999) ("[A]lthough inadequate medical treatment may, at a certain point, rise to the level of a constitutional violation, malpractice or negligent care does not."). Instead, a showing of deliberate indifference requires the prisoner to submit evidence that prison officials "'refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs.'" Id. (citations omitted).

Moreover, the Fifth Circuit has held repeatedly that mere disagreement with medical treatment does not state a claim for deliberate indifference to serious medical needs under the Eighth Amendment. See Stewart, 174 F.3d at 535; Norton v. Dimazana, 122 F.3d 286, 292 (5th Cir. 1997); Spears v. McCotter, 766 F.2d 179,

181 (5th Cir. 1985); <u>Young v. Gray</u>, 560 F.2d 201, 201 (5th Cir. 1977).  In that respect, the Supreme Court has recognized that a "medical decision" concerning whether to order a particular form of treatment "does not represent cruel and unusual punishment." <u>Estelle v. Gamble</u>, 429 U.S. 97, 107 (1976).

    2.   <u>Evidentiary Sufficiency: Seizure Medication</u>

Plaintiff's primary claim against Dr. Davis relates to the treatment for Plaintiff's seizure disorder.  Plaintiff contends that Davis was aware Plaintiff required seizure medication but failed to reauthorize Plaintiff's Phenobarbital prescription or timely prescribe a reasonable alternative.  Plaintiff further asserts that Dr. Davis showed deliberate indifference by prescribing Carbamazepine, despite Plaintiff's reports of being allergic to that drug.  Finally, Plaintiff contends that Davis failed to provide alternative treatment for Plaintiff's seizure condition after Plaintiff suffered allergic reactions to the Carbamazepine.

The Court must first address whether Plaintiff has shown that his seizure disorder was sufficiently serious to satisfy the objective prong of the Eighth Amendment standard.  Although Plaintiff has not documented his initial diagnosis and full treatment history for seizures, Plaintiff has presented medical records showing that while housed at the Liberty County Jail he was

prescribed medications for seizures, including Klonopin and Phenobarbital. (Docket No. 21, Ex. 8 at 18-40.)  The records show that Plaintiff's prescription for Phenobarbital was current when he arrived at MCJ.  This evidence is sufficient to show that Plaintiff's condition had been diagnosed by a physician as mandating treatment, thereby satisfying the objective prong of the *Farmer* standard.

The second prong focuses on the subjective component.  The first question presented is whether Dr. Davis was subjectively aware Plaintiff faced a serious risk of seizures upon his arrival at MCJ.  The record does show that Dr. Davis had information from which he might have concluded that Plaintiff required seizure medication; specifically, the inquiry from Defendant Tidwell about Plaintiff's reported seizure disorder and prescription for Phenobarbital.  However, there is no evidence that Dr. Davis concluded from Tidwell's inquiry that Plaintiff needed medication immediately.  Instead, the record shows that upon being notified of Plaintiff's reported seizure disorder and prescription for Phenobarbital, Dr. Davis promptly inquired about Plaintiff's recent seizure history but received no immediate response.  There is no evidence that Dr. Davis deliberately avoided the issue or ignored what he believed to be a substantial risk to Plaintiff's health or safety.  In fact, Dr. Davis states in his affidavit that even after reviewing Plaintiff's records from Kingwood Medical Center, which

did not arrive until some time later, he still did not believe Plaintiff had a specific medical need for Phenobarbital. (Davis Aff. ¶ 8.) There is also no evidence that Dr. Davis knew of any seizures that Plaintiff had recently experienced.[4] Thus, Dr. Davis's failure immediately to reauthorize Phenobarbital or prescribe an alternative seizure medication does not show deliberate indifference.

Contrary to Plaintiff's assertions, Dr. Davis's decision nine days after Plaintiff entered MCJ, and the day after Plaintiff's first self-reported seizure, to prescribe the seizure medication Carbamazepine does not support the conclusion that Davis showed deliberate indifference by not prescribing seizure medication sooner. Plaintiff contends that Dr. Davis's decision to prescribe Carbamazepine amounts to an admission that Plaintiff required medication all along, but there is no support for this inference. Dr. Davis states that he prescribed Carbamazepine only out of an abundance of caution after Plaintiff reported experiencing a seizure, not because Plaintiff's medical records indicated it was required or because Davis believed Plaintiff was at serious risk without it. (Davis Aff. ¶¶ 6-8.) The uncontroverted summary judgment evidence of Dr. Davis's decision to prescribe Carbamazepine shows an attentiveness to Plaintiff's situation and

---

[4] Plaintiff first reported that he had had a seizure on February 18, 2010. Dr. Davis was notified and he prescribed Carbamazepine for Plaintiff on February 19.

an effort to treat Plaintiff while also safeguarding against addictive drug abuse.

Plaintiff also claims that Dr. Davis showed deliberate indifference by prescribing Carbamazepine because Plaintiff's Update form showed Plaintiff was allergic to the drug. This argument fails for several reasons. First, there is no evidence that Dr. Davis ever saw Plaintiff's Update form. And, even if Dr. Davis failed to check the Update, or simply overlooked it, that would not amount to deliberate indifference. Nor is there any evidence that Dr. Davis received notice of Plaintiff's reported allergy to Carbamazepine from other sources. Although Defendant Parker informed Dr. Davis that Plaintiff had reported allergies to Depakote and Dilantin, she did not mention Plaintiff's reported Carbamazepine allergy when she inquired of Dr. Davis about Plaintiff's seizure medication on February 19, 2010. (COU 86.) Second, the medics never saw Plaintiff present with the claimed symptoms that he attributed to an allergy to Carbamazepine, nor did Plaintiff supply to MCJ medics, or to Dr. Davis, any medical records showing that he had previously been prescribed Carbamazepine and had had an allergic reaction to it. Instead, the only report of an allergy was Plaintiff's own assertion of such in support of his request for a Phenobarbital prescription. Third, Dr. Davis had reason to suspect Plaintiff was feigning allergies in order to get Phenobarbital for illicit purposes. Specifically, Dr.

20

Davis was aware of Phenobarbital's addictive qualities and high potential for abuse, as well as Plaintiff's unsupported claims of allergic reactions to multiple alternative seizure medications. (Davis Aff. ¶¶ 6-7.)  Combined, these factors gave Dr. Davis reason to question Plaintiff's reports of allergies.  Thus, there is no evidence that Dr. Davis believed Plaintiff to be allergic to Carbamazepine but prescribed it anyway.

There is also no evidentiary support for Plaintiff's contention that Dr. Davis showed deliberate indifference by not prescribing Phenobarbital or another alternative medication after Plaintiff declined Carbamazepine.  As observed above, Dr. Davis was not confident from Plaintiff's self-reported seizure accompanied by his request for Phenobarbital that Plaintiff required seizure medication in the first place, and only prescribed Carbamazepine due to Plaintiff's claim and out of an abundance of caution.  More importantly, as already observed, there is no evidence that Dr. Davis had knowledge of Plaintiff having actually experienced allergic reactions to Carbamazepine while at MCJ.  Likewise, although Plaintiff self-reported that he had seizures, this was never corroborated by other inmates or jail staff, even after Plaintiff was told on February 20, 2010, "to notify the officer or have another inmate notify the officer if [you have] a seizure." (COU 84.)  Plaintiff states in his declaration that it was "at night when I would usually experience seizure activities," and

21

inmates housed with him told him they thought he was "merely having nightmares."  The only record of Plaintiff ever naming another person who allegedly witnessed him having a seizure was in a grievance filed May 30, 2010.  (COU 156.)  However, there is no record that Plaintiff or jail officials ever obtained a statement from the alleged inmate witness.

Plaintiff also never identified any witnesses to corroborate his allergic reactions to Carbamazepine.  Although Plaintiff states that he experienced severe allergic symptoms, including rashes and bleeding from the anus, mouth and skin, there is no record that anyone else ever observed these symptoms.  As Mike Weinzettle, Senior Sergeant at MCJ, explains in his uncontroverted affidavit, given the communal nature of Plaintiff's housing arrangement and prisoners' general intolerance for exposure to illness, it is highly unlikely Plaintiff could have experienced the visible allergic symptoms he alleges without someone noticing and reporting it to authorities.  (Weinzettle Aff. (Docket No. 17, Ex. F) ¶¶ 3-4.)  Moreover, although Plaintiff was administered medications on an almost daily basis, Plaintiff never exhibited to any member of the medical staff any of these symptoms.  Thus, Plaintiff's decision to discontinue the Carbamazepine, without providing any corroboration for his claims of allergic reactions, bolstered Dr. Davis's medical opinion that Plaintiff did not really need seizure medication but was merely exhibiting drug-seeking behavior.  Even

22

if this opinion was mistaken, Dr. Davis's subjective perception precludes a finding of deliberate indifference.

In sum, Plaintiff has not presented sufficient evidence to raise a genuine issue of material fact that Dr. Davis was deliberately indifferent to Plaintiff's requests for seizure medication or to alleviate the complications he allegedly experienced. As the Supreme Court has noted, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position" is insufficient for a plaintiff to defeat summary judgment, instead, "there must be evidence on which the jury could reasonably find for the plaintiff." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252, 106 S. Ct. 2505, 2512, 91 L. Ed. 2d 202 (1986). Because Plaintiff has not presented such evidence here, Dr. Davis is entitled to summary judgment on Plaintiff's claims regarding treatment of Plaintiff's seizure disorder.

### 3.   Evidentiary Sufficiency: Other Claims Against Dr. Davis

Plaintiff's Complaint asserts that Dr. Davis violated Plaintiff's Eighth Amendment rights by failing properly to treat his other ailments—including anxiety, spine and back injuries, and chronic pain—and by failing to examine Plaintiff directly. With the exception of his spine and back injuries, Plaintiff has not shown that these ailments were objectively sufficiently serious to invoke Eighth Amendment protection. Moreover, even assuming they

23

were sufficiently serious, there is no evidence that Dr. Davis was deliberately indifferent regarding them.

Concerning Plaintiff's treatment for anxiety, the record shows that Plaintiff was receiving Effexor when he arrived at MCJ and that it was continued following his processing.  The Effexor was only cancelled after Plaintiff refused to take it for an extended time.  Although Plaintiff complained that the medication caused him to "go crazy" when taken without Phenobarbital, there is no evidence Plaintiff ever formally requested a mental health evaluation.  While Plaintiff states in his grievances that he told medical staff he wanted a psychiatric evaluation, there is no evidence he had actually submitted a proper request form.  Moreover, when informed that Plaintiff no longer wanted the Effexor, Dr. Davis recommended that Plaintiff be "stepped down" from the medication gradually, rather than stopping it abruptly.  By that time, however, Plaintiff had already stopped taking it.  There is also no indication that Plaintiff ever requested an alternative anxiety medication.  Instead, Plaintiff insisted that he be allowed to continue Effexor, but only in combination with Phenobarbital.  Once again, this merely shows a difference of opinion regarding the proper treatment for Plaintiff's anxiety condition.  Plaintiff has failed to present evidence raising so much as a genuine issue of material fact that Dr. Davis showed deliberate indifference to Plaintiff's anxiety condition.

Regarding his orthopedic injuries, Plaintiff has presented records showing that he was found to be disabled due to spine and neck injuries as of October 30, 1989, and was awarded supplemental security income payments by the Social Security Administration. (SSA Decision (Docket No. 30).)  Plaintiff presumably offers this as proof that he continued to suffer from permanent spine/neck injuries upon his arrival at MCJ which required ongoing treatment and accommodations.  However, because these records deal with injuries sustained more than twenty years prior to Plaintiff's arrival at MCJ, they are of limited relevance to Plaintiff's present claims against Dr. Davis.  More importantly, there is no evidence that Plaintiff during his seven months at MCJ ever presented these records to officials at MCJ, much less that Dr. Davis had any knowledge of them.  Thus, even if these records satisfy the objective prong of the Eighth Amendment test, they do not show that Dr. Davis was deliberately indifferent to Plaintiff's past injuries.

The same applies to Plaintiff's claim regarding chronic pain management.  Even assuming that Plaintiff can show he suffered from severe chronic pain due to his various ailments, there is no summary judgment evidence that Dr. Davis was aware of it but failed to provide treatment.  In fact, there is no evidence that Plaintiff ever formally requested to be examined by Dr. Davis despite the fact that prescription pain medication could only be approved by

him.   (Davis Aff. ¶ 11.)   Although Plaintiff states that he repeatedly told medical personnel he wanted to be examined by a doctor, Plaintiff's medical records contain no written request by Plaintiff to be seen by the Medical Director.[5]   The record also shows that Davis believed Plaintiff was receiving non-prescription pain medications through the jail commissary while at MCJ.  (Davis Aff. ¶ 12.)

Finally, Plaintiff's claim that Dr. Davis failed to ensure Plaintiff was assigned to a bottom bunk is meritless.  Not only is there no evidence that Dr. Davis was asked to make such a recommendation, the record shows that Dr. Davis had no authority to make bunk assignments.  (Davis Aff. ¶ 13.)  Moreover, according to Defendant West, MCJ does not make specific bunk assignments for inmates.  (COU 139.)  Thus, even if Plaintiff had informed Dr. Davis that he was having difficulty getting into bed, Davis could not have ensured that Plaintiff received a bottom bunk.   Under those circumstances Dr. Davis could not have shown deliberate indifference to Plaintiff's plight.

---

[5] Dr. Davis states that MCJ policy required an inmate who requested to see the Medical Director to pay a co-pay from the inmate's personal account before being seen.  (Davis Aff. ¶ 10.) Plaintiff does not assert that he was denied access to Dr. Davis due to inability to pay the required co-payment.

4.   <u>Conclusion</u>

Plaintiff has not presented evidence sufficient to raise a
genuine issue of material fact that Dr. Davis was deliberately
indifferent to Plaintiff's medical needs.  Instead, the record
shows that Dr. Davis did not subjectively perceive a risk of
serious harm to Plaintiff and that Plaintiff's allegations in
essence amount to only a difference of opinion regarding the proper
treatment for his conditions.  As the Fifth Circuit has repeatedly
noted, such disagreements do not state a claim for deliberate
indifference to serious medical needs under the Eighth Amendment.
*See* <u>Stewart</u>, 174 F.3d at 535.  Thus, Dr. Davis is entitled to
summary judgment.

V.   <u>Remaining Defendants' Motion for Summary Judgment</u>

The remaining Defendants, Montgomery County, Texas; Tommy
Gage, Montgomery County Sheriff; Edsel West, MCJ Medical
Supervisor; and jail medics Robert Simard, Tracy Tidwell, and Mini
Parker, have filed a separate motion for summary judgment.

A.   <u>Montgomery County and Sheriff Gage</u>

Plaintiff asserts that Montgomery County and Sheriff Gage, in
his official capacity, are liable for the alleged violations of
Plaintiff's rights because they were responsible for the policies
that caused Plaintiff's injuries.  Specifically, Plaintiff alleges

27

that Sheriff Gage, as an agent of Montgomery County, instituted and enforced a policy which strictly prohibited inmates from receiving medications like Phenobarbital while in MCJ, regardless of their need for such medications.  Plaintiff also asserts that the policy did not accommodate inmates taking addictive medications like Phenobarbital that can cause serious withdrawal symptoms if abruptly discontinued.

A governmental entity can be sued for monetary damages and injunctive relief under 42 U.S.C. § 1983 only if its official policy or custom causes a person to be deprived of a federally protected right.  Monell v. Department of Social Services, 436 U.S. 658, 694, 98 S. Ct. 2018, 2037-2038 (1978).  A municipality may not be held liable under Section 1983 on the basis of *respondeat superior* or vicarious liability.  Id. at 691, 98 S. Ct. at 2036. Municipal liability under Section 1983 requires proof of (1) a policy maker; (2) an official policy; and (3) a violation of a constitutional right whose moving force is the policy or custom. Valle v. City of Houston, 613 F.3d 536, 541-42 (5th Cir. 2010).

For a municipality to be held liable based on its policy or custom, a plaintiff must show that either, (1) the policy itself violated federal law and authorized or directed the deprivation of federal rights, or, (2) the policy was adopted or maintained by the municipality's policymakers "with 'deliberate indifference' as to its known or obvious consequences. . . ."  Bd. of County Comm'rs of

Bryan County v. Brown, 520 U.S. 397, 407, 117 S. Ct. 1382, 1390 (1997). "A showing of simple or even heightened negligence will not suffice." Id. Deliberate indifference "is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." Id. at 410, 117 S. Ct. at 1391.

The policy at issue here is the MCJ Health Services Plan in place at the time of Plaintiff's confinement, which provided in relevant part:

> E.1. Any drugs or prescription medications in the possession of any inmate during admission will be confiscated and stored in the Jail Medical Department until such drugs, dosage, etc. can be verified with the inmate's prescribing Medical Doctor. After proper verification, and approval by [the] Jail Physician, the drugs and/or medication will be dispensed as prescribed by jail medics.

> F.1. Normally, the only drugs or medications to be administered to any inmate will be those prescribed by a licensed Medical Doctor after he/she has been admitted to the Montgomery County Jail. The Jail Medics are authorized to dispense prescription medication.

(MCJ Health Services Plan (Docket No. 18, Ex. 9) 104.) Plaintiff asserts that this policy amounted to a blanket prohibition on certain drugs and directly caused him to be deprived of Phenobarbital in violation of his rights. Defendant Gage does not deny responsibility for this policy but disputes Plaintiff's interpretation of it and the manner in which it was enforced.

There is no evidence to support Plaintiff's assertion that MCJ policy strictly forbade distribution of certain medications to inmates.  As stated by Defendant West, the relevant policies "have been interpreted to mean that once an inmate is received into [MCJ], they are under the care of the Medical Director/Jail Physician . . .," and, "if it was the opinion of the Medical Director that a drug had a risk of abuse, such drug would be prohibited from inmate possession, prescription, or use *unless the Medical Director verified that the inmate had a reasonable medical need for such drug and there was no reasonable alternative. . . ."* (West Aff. (Docket No. 18, Ex. 2) ¶¶ 5-6 (emphasis added).)  Thus, although the policy was the moving force behind the confiscation of Plaintiff's Phenobarbital, it was not the reason the medication was discontinued.  The medication was discontinued based on Dr. Davis's medical determination that there was insufficient evidence of a medical necessity to warrant its continued use, and that other reasonable alternatives were available for seizures.  (Davis Aff. ¶¶ 8-9.)

Because Plaintiff fails to show that MCJ policies were the moving force behind any injury alleged in his complaint, his claims against Montgomery County and Sheriff Gage must be dismissed.[6]

---

[6] In his summary judgment materials Plaintiff states that he experienced severe withdrawal symptoms due to the abrupt discontinuation of his Phenobarbital pursuant to MCJ policy. (Docket No. 21 at 2; Hood Decl. ¶ 9.)  However, this claim was not included in Plaintiff's complaint (Docket No. 1) and Plaintiff

B.   Edsel West

Plaintiff asserts that Defendant West is liable under Section 1983 because, as Medical Supervisor, he reviewed Plaintiff's medical requests and denied Plaintiff's grievances.   Plaintiff further asserts that West failed adequately to investigate Plaintiff's complaints and respond to his grievances.

Plaintiff has not presented evidence to support his claims against Defendant West.   Instead, the record shows that West did look into Plaintiff's grievances to ensure that Plaintiff was receiving appropriate care.   (West Aff. ¶ 7.)   West states that he also attempted to locate Plaintiff's physician and obtain his medical records with limited success.   (Id.)   Based on his research, West concluded that Plaintiff was "a classic drug seeker" and that his grievances were unfounded.   (Id.)   West states that he never received any evidence to support Plaintiff's claims that he experienced seizures or serious allergic reactions while at MCJ. (Id. ¶¶ 9-10.)

Although Plaintiff strenuously rejects West's conclusion that Plaintiff was a "drug seeker," Plaintiff has not presented any evidence to refute West's statements that he took appropriate measures to investigate Plaintiff's grievances and ensure that Plaintiff was receiving adequate medical care.   Moreover, the

_____

never filed a motion to amend.   Thus, this claim is not properly before the Court.

record shows that West had ample reason to conclude that Plaintiff's grievances were unfounded and that Plaintiff was exhibiting drug seeking behavior. Specifically, West was aware of Plaintiff's criminal history, which showed multiple convictions for DWI and possession of marijuana; Plaintiff's failure to identify an outside physician who was not deceased; Plaintiff's inability to provide comprehensive medical records; Plaintiff's reports of unwitnessed seizures and falls; and, Plaintiff's unsupported claims of being allergic to multiple less addictive alternative medications. (Id. ¶¶ 7-11.) Plaintiff has not offered any evidence that West's concerns were merely pretextual, nor has Plaintiff shown that he presented West or other officials with information to alleviate these concerns. While Plaintiff may disagree with West's interpretation of these facts, the summary judgment record establishes that West was not indifferent to Plaintiff's medical needs, but was genuinely concerned about preventing substance abuse within the jail.

Thus, the Court concludes that Defendant West is entitled to summary judgment on Plaintiff's claims.

## C.   Jail Medics: Tidwell, Simard and Parker

Plaintiff's complaint alleges that jail medics Tracy Tidwell, Robert Simard, and Mini Parker each violated Plaintiff's Eighth Amendment rights by withholding his medication and failing to take

appropriate action to have it restored.  While each of the medics had direct interaction with Plaintiff during his time at MCJ, the record shows that Defendant Tidwell was the only one directly involved in confiscating Plaintiff's Phenobarbital pursuant to MCJ policy.  Upon doing so, Tidwell promptly sent a message to Dr. Davis inquiring whether the medication should be restarted or replaced.  Although Dr. Davis responded the next day, asking for more information, eight days apparently passed before anyone brought Plaintiff to the infirmary for additional followup. Plaintiff alleges that this delay caused him to suffer a seizure and severe withdrawal symptoms due to the lack of Phenobarbital.

A delay in providing medical care may rise to the level of a constitutional violation if the delay itself causes substantial harm.  *See* <u>Mendoza v. Lynaugh</u>, 989 F.2d 191, 195 (5th Cir. 1993). Plaintiff's only direct evidence to support his allegation that he suffered substantial harm from the eight-day delay in following up regarding his seizure medication is his sworn declaration in response to Defendants' motion for summary judgment, which states, "When my Phenobarbital seizure medication was abruptly discontinued by Dr. Davis,[7] I began experiencing excruciating withdrawal symptoms, which included extreme anxiety and panic attacks, heart

---

[7] Although Plaintiff identifies Dr. Davis as responsible for discontinuing the medication, as previously discussed, the record shows the medication was initially withheld by Defendant Tidwell pursuant to MCJ policy.  However, Dr. Davis did not reauthorize the medication.

pounding and racing, aching bones and joints, hallucinations, insomnia, and fear that I would die."[8]   (Hood Decl. ¶ 9.) Plaintiff's pain and discomfort during his withdrawal is not the kind of substantial harm that rises to the level of a constitutional violation. *See e.g.*, King v. Kilgore, 98 F.3d 1338, 1996 WL 556845 (5th Cir. 1996) (unpublished) (observing that while alleged denial of medical attention to a prisoner's prolonged asthma attack, which is "a serious and potentially deadly problem," caused the prisoner pain, suffering and discomfort, such was insufficient to allege that he experienced substantial harm of constitutional proportions).  Even if his pain and discomfort were sufficient, however, Plaintiff has presented no evidence showing that the delay was caused by deliberate indifference of Defendants.

The record here does not support the inference that Defendant Tidwell was deliberately indifferent regarding Plaintiff's seizure medication.  Although the record shows that several days passed before Tidwell followed up on Dr. Davis's request for more information about Plaintiff's seizures, there is nothing to indicate the delay was purposeful or caused by deliberate indifference to Plaintiff's condition.[9]  In fact, the record shows

---

[8] The fact that Plaintiff also directed his attorney to inquire about having the seizure medication restored also lends some support for these statements.

[9] Because Tidwell handled the initial processing and sent the original inquiry to Dr. Davis, the Court assumes Tidwell was responsible to follow up.  Moreover, there is no evidence that any

that Tidwell was solicitous of Plaintiff's needs overall.  Tidwell properly handled Plaintiff's processing into the jail, documenting each of Plaintiff's numerous medications and ensuring that each of them, except Phenobarbital, was continued.  Tidwell also sent a prompt inquiry to Dr. Davis about the seizure medication.  On February 12, 2010, Tidwell noted that Plaintiff's prescription for Hydrodiuril was nearly depleted and requested the doctor's approval for a refill.  (COU 98.)  Given this uncontroverted summary judgment evidence of Tidwell's attentions to Plaintiff's medical needs, the mere delay of eight days before Plaintiff was interviewed in the infirmary and a further response was conveyed to Dr. Davis is inadequate to raise an issue of fact that Tidwell, or other medics, were deliberately indifferent to Plaintiff's needs. *See* Hare v. City of Corinth, 74 F.3d 633, 645 (5th Cir. 1996) (en banc) (stating mere negligence, or even gross negligence, is insufficient to establish subjective deliberate indifference.)

Similarly, Plaintiff has presented no evidence showing that either Simard or Parker was responsible for any lapse in Plaintiff's treatment or was deliberately indifferent toward Plaintiff.  Instead, the record shows that both made detailed notes of Plaintiff's complaints and forwarded them to Dr. Davis for review.  (COU 3-106.)  For instance, Parker made inquiries to Dr.

---

of the other medics were aware of Dr. Davis's inquiry or were in a better position to respond sooner.

Davis about Plaintiff's anxiety medication. (COU 84-88.) On February 19, 2010, Parker relayed Plaintiff's report of a seizure and repeated his request for Phenobarbital. (COU 86.) Defendant Simard assisted on many occasions with maintaining Plaintiff's medications and making appropriate entries in Plaintiff's medical records. (COU 3-106.) There is no evidence that these Defendants ever believed Plaintiff faced a substantial risk of serious harm but failed to take action. Moreover, Plaintiff does not dispute that the jail medics lacked authority to alter Plaintiff's medications without approval from their superiors.

Thus, Plaintiff has not met his burden to show so much as a genuine issue of material fact that the jail medics violated Plaintiff's constitutional rights. Defendants Tidwell, Simard and Parker are therefore entitled to summary judgment.

## VI. Qualified Immunity

Defendants have asserted the affirmative defense of qualified immunity from Plaintiff's claims. "Qualified immunity is 'an entitlement not to stand trial or face the other burdens of litigation.'" Saucier v. Katz, 533 U.S. 194, 199-200 (2001) (quoting Mitchell v. Forsyth, 472 U.S. 511, 526 (1985)). When a defendant invokes qualified immunity, the burden is on the plaintiff to demonstrate the inapplicability of the defense. McClendon v. City of Columbia, 305 F.3d 314, 322 (5th Cir. 2002).

36

"To rebut the qualified immunity defense, the plaintiff must show: (1) that he has alleged a violation of a clearly established constitutional right, and (2) that the defendant's conduct was objectively unreasonable in light of clearly established law at the time of the incident." Waltman v. Payne, 535 F.3d 342, 346 (5th Cir. 2008) (footnote omitted).   The Court has discretion "in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." Pearson v. Callahan, 555 U.S. 223, 129 S. Ct. 808, 818 (2009).

Because Plaintiff has not shown that Defendants violated a clearly established constitutional right, Defendants are entitled to qualified immunity on Plaintiff's claims.   Moreover, given Plaintiff's failure to meet his burden under the first prong of the qualified immunity analysis, the Court need not address whether Defendants' conduct was objectively unreasonable in light of clearly established law at the time of the alleged incidents.

## VII. Conclusion

The extensive summary judgment record in this case fails to disclose evidence sufficient to raise a genuine issue of material fact that any of Defendants was deliberately indifferent to Plaintiff's serious medical needs.   Instead, the record shows that jail medical personnel were in regular, almost daily, contact with

37

Plaintiff upon his arrival and continuing throughout his stay at MCJ.  This is supported by the hundreds of entries on Plaintiff's MCJ medical records generated over a period of just seven months. (COU 3-106.)  The medical records show that medical personnel had frequent contact with Plaintiff, administered his medicines nearly every day, and regularly conveyed necessary information to the Medical Director, Dr. Davis, who promptly responded to their inquiries.  There is no evidence that any of the medics or other jail personnel ever observed Plaintiff experiencing any serious medical issues during his seven months in MCJ.  Nor is there any record that Plaintiff ever followed jail procedures to request that he be examined by Dr. Davis.  Although in Plaintiff's first week in MCJ there was as a brief lapse in communication regarding Plaintiff's request for Phenobarbital, there is no evidence that it was caused by any deliberate indifference of Defendants.  In sum, Plaintiff has failed to show a genuine issue of material fact for trial on any of his claims and Defendants are entitled to judgment as a matter of law.  *Compare* Hood v. Sandmann, 2013 WL 4406874 (5th Cir. 2013) (unpublished) (affirming dismissal of Plaintiff Hood's other case for denying him Phenobarbital, finding that "[P]rison medical staff continually attempted to address Hood's medical issues, yet Hood constantly disagreed with prison staff.  Such disagreement with medical professionals does not establish an Eighth Amendment claim.  The record also supports the district

court's determination that Hood did not suffer substantial harm as a result of not receiving Phenobarbital." (internal citation omitted)).

## VIII. <u>Order</u>

Based on the foregoing, the Court ORDERS the following:

1.    Defendant Davis's motion for summary judgment (Docket No. 17) is GRANTED.

2.    The remaining Defendants' motion for summary judgment (Docket No. 18) is GRANTED.

3.    All other pending motions, if any, are DENIED.

4.    This civil rights action is DISMISSED WITH PREJUDICE. It is SO ORDERED.

SIGNED at Houston, Texas, on September 11, 2013.

_____
EWING WERLEIN, JR.
UNITED STATES DISTRICT JUDGE

39